IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-002244-RBJ

THOMAS D. OSLAND,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER

This matter is before the Court on review of the Commissioner's decision denying plaintiff Thomas D. Osland's application for disability insurance benefits pursuant to Title II of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the district court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citations omitted). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

The Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (unpublished) (citations omitted). Thus, although some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court might "have made a different choice had the matter been before it de novo." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (citations omitted). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

Upon review, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 45 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Mr. Osland applied for disability insurance benefits on or around February 24, 2011. He claimed inability to work since his alleged onset date of November 1, 2009 due to bipolar disorder and hand tremors. R. 403, 544. Mr. Osland's date last insured (DLI) was June 30, 2013. The Commissioner denied Mr. Osland's application on June 20, 2011. Mr. Osland then requested a hearing before an administrative law judge (ALJ), which was conducted on

November 6, 2012. On November 16, 2012 ALJ Lowell Fortune issued an opinion denying benefits. The Appeals Council denied Mr. Osland's request for review on May 8, 2014. Thereafter, Mr. Osland filed a timely appeal with this Court.

## DENIAL OF THE CLAIM

To qualify for disability insurance benefits, an individual must (a) meet the insured status requirements of the Social Security Act (the "Act"); (b) not have attained retirement age; (c) file an application; and (d) be under a "disability" as defined in the Act. 42 U.S.C § 423(a)(1). Disability is defined as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The claimant carries the burden of establishing that he was disabled prior to his date last insured. *See Flaherty*, 515 F.3d at 1069.

The Social Security Administration uses a five-part process to determine whether a claimant qualifies for disability insurance benefits. 20 CFR § 404.1520. At **step one** the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR § 404.1520(a)(4)(i). The ALJ found that Mr. Osland had not engaged in substantial gainful activity since his alleged onset date of November 1, 2009. R. 331.

At **step two** the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 CFR § 404.1520(a)(4)(ii). The ALJ found that Mr. Osland suffered from the following severe impairments: affective disorder, personality disorder, and essential tremors of the hands. R. 331. The ALJ also found that Mr. Osland suffered from the following non-severe impairments: posttraumatic stress disorder, substance abuse, and sleep apnea. *Id.* Finally, the ALJ determined

that Mr. Osland's alleged traumatic brain injury (or cognitive disorder) and numbness on the left side of his body were non-medically determinable impairments based on the lack of medical evidence supporting either condition.  R. 332.

At **step three** the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  20 CFR § 404.1520(a)(4)(iii).  The ALJ determined that none of Mr. Osland's impairments – alone or in combination – met or medically equaled one of the impairments in the Listings.  R. 333–34.

Before reaching step four, the ALJ is required to determine the claimant's residual functional capacity ("RFC").  *See* R. 16; 20 CFR § 404.1520(a)(4)(iv).  An RFC represents "the most [a claimant] can still do despite his limitations."  20 CFR § 404.1545(a)(1).  The RFC is "the claimant's maximum sustained work capability."  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).  The ALJ found that Mr. Osland has an RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the following limitations: the claimant cannot ambulate over uneven terrain; should avoid climbing ladders, scaffolds, and ropes; is able to perform handing and fingering frequently; is unable to work in an assembly line due to limitations in persistence, pace, and stress; is unable to engage in work requiring intense, sustained concentration; and is able to interact frequently with coworkers and the public.  R. 334.

At **step four** the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of his past work.  20 CFR § 404.1520(a)(4)(iv).  The ALJ found that Mr. Osland could perform his past relevant work as a safety manager, department manager, and door-to-door sales representative.  R. 341.  The ALJ added that even if Mr. Osland were limited to only occasional handling and fingering – presumably due to his tremors – he

could still return to his past relevant work as a safety manager. R. 342. In turn, the ALJ found that the claimant was not under a disability as defined by the Social Security Act at any time from November 1, 2009 through the date of his decision, November 16, 2012 (which predates Mr. Osland's DLI). Pursuant to this finding, the ALJ did not progress to **step 5**.

## ANALYSIS

Mr. Osland contends that the ALJ erred by (1) failing to apply the correct legal standards in evaluating his treating source opinions and (2) failing properly to evaluate and consider the combined effect of all of his physical and mental impairments when determining his RFC. The Court agrees in part and therefore remands this decision for further findings and analysis.

### A. **Treating Source Opinions**.

Mr. Osland argues that the ALJ applied incorrect legal standards in his evaluation of the treating medical source opinions. I agree in part, and I find that further information concerning the opinions of Kimber-Lynne Conger, M.D., is needed, for the following reasons:

1. Controlling Weight. A treating physician's medical opinion must be given controlling weight if "it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). The ALJ found that the opinions of Mr. Osland's treating providers were not entitled to controlling weight.[1] Maybe so, but the decision as written does not justify that conclusion. The ALJ relied on opinions of the State agency reviewing psychologist, consultative examiner, and medical expert to conclude that the

---

[1] The ALJ did not summarize the actual opinions in his decision before weighing them. That makes it difficult for the Court to review his determination of the weight to be given to each opinion. On remand, the Court requests that the ALJ summarize each opinion and the evidence that either supports or conflicts with that opinion.

opinions of the treatment providers were not entitled to controlling weight. However, the fact that there are inconsistent opinions between State agency doctors and treating providers is not, by itself, a sufficient reason to deny giving controlling weight to the latter. The medical <u>opinions</u> of non-treating sources, while relevant, are not sufficient "evidence" for purposes of determining whether a treating source opinion is entitled to controlling weight.

2. <u>Reasons for Discrediting Dr. Conger</u>. If an ALJ finds that the medical opinions of the treating provides are not entitled to controlling weight, then "the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) (internal quotation marks and citations omitted). Specifically, "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Here, the opinions of Mr. Osland's primary treating physician, Dr. Conger, a psychiatrist, were given little if any weight. Again, that ultimately might be justified, but I am not persuaded by the reasoning provided in the written decision.

a. Dr. Conger's opinions were discounted because they appeared to have been based solely on Mr. Osland's subjective complaints and were not verified by testing. But, a provider's reliance on a patient's subjective reports is not, in itself, a sufficient basis for discrediting her opinion. *Cf. Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished) ("The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements."); *Robinson*, 366 F.3d at 1083 ("[A] psychological opinion may rest either on

observed signs and symptoms or on psychological tests."). The ALJ found Mr. Osland's hearing testimony to lack credibility, and from that he inferred that he could not rely on the credibility of Mr. Osland's complaints to Dr. Conger. However, a psychiatrist presumably has some training and experience in detecting malingering, and there is no indication in her records (R. 785–95) that she suspected that. What's more, it is unclear to me what validating test the ALJ would have had Dr. Conger conduct.

b. Dr. Conger's opinions were also discounted because she seemed "confused" as to when she started treating Mr. Osland – 2003 by her account (R. 786), 2010 according to Mr. Osland. The discrepancy may have a simple explanation as it appears that Mr. Osland began his relationship with the treatment facility, Arapahoe/Douglas Mental Health ("ADMH"), in 2003. It is certainly possible that Dr. Conger listed that date instead of the date she personally began treating Mr. Osland. Of course, this is just speculation on the part of the Court. However, the duty lies with the ALJ to inquire as to this discrepancy before discounting the opinions of Dr. Conger. The Court asks that such an inquiry be made on remand.

3. <u>Comparative Weight</u>.

As discussed earlier, if an ALJ finds that a treating source opinion is not entitled to controlling weight, he must then determine how much weight to give each medical source opinion based on the hierarchical framework outlined above. The ALJ devised his own comparative method for weighing the various opinions:

> Having addressed the issue of *controlling* weight, I now address the issue of the *relative or comparative* weight to give to the opinions of the various medical sources. In addressing comparative weight, I consider both the qualifications and the opinions of each medical source. I then consider the overall combination of each medical source's qualifications and opinions, and compare that *overall* assessment with similar assessments I have made concerning the other medical sources. In this manner, each medical source is then given – relatively or comparatively speaking – more or less weight, as the case may be.

R. 339 (emphasis in original) (footnotes omitted).

While the factors he considered in the weighing process are relevant, there is no indication in this description of his methodology that the provider's relationship with Mr. Osland was also factored into the comparison.[2] On remand, assuming that the ALJ determines that the treating source opinions are not entitled to controlling weight, each provider's opinion should be separately weighed, taking into account the factors outlined in *Oldham*, 509 F.3d at 1258.

4. <u>GAF Score</u>. The ALJ discredited Mr. Osland's lowest Global Assessment of Functioning (GAF) score of 40, finding that it was inconsistent with the claimant's "generally mild symptoms and relatively normal mental status examination." R. 336. But, while "[s]tanding alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. . . . [a] GAF score of fifty or less, however, does suggest an inability to keep a job." *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (unpublished). Furthermore, the ALJ favorably cited results where Mr. Osland's GAF score was in the 60s. *See* R. 336, 337. It is not proper for an ALJ "to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). That is not to say that the ALJ did this here, but because the case is being remanded, that issue needs further explanation.

**B. <u>Combined Effect of Impairments</u>**

Mr. Osland argues that the ALJ further erred in assessing his residual functional capacity by failing to consider the combined effect of all of his physical and mental impairments. In

---

[2] While the ALJ includes a footnote stating that he must consider the factors outlined in 20 CFR §§ 404.1527 and 416.927 – factors which take into account the relationship between the claimant and the medical provider – the description of his method does not confirm that he actually did follow the regulations. The opinion must reflect that the ALJ considered these factors, even if he need not list out each factor one by one. *Oldham*, 509 F.3d at 1258.

particular, Mr. Osland contends that the ALJ failed adequately to consider his history of head concussion, sleep apnea, obesity, and hypothyroidism when determining his RFC. He also insists that insofar as he did not present treatment records, the ALJ failed to perform his duty of inquiry to fully and fairly develop the record.

Both severe and non-severe impairments must be incorporated into the RFC assessment. 20 C.F.R. § 404.1545(a)(2); *see also Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013) ("[A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five."). On remand, the ALJ should explain how he incorporated the non-severe impairments into his RFC assessment.

Having said that, however, one must remember that "[t]he burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). Although the ALJ has a duty to develop the record by obtaining pertinent, available medical records that come to his attention during the course of a hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case." *Id.* (internal quotation marks and citation omitted). In this case, it is unclear what work-related limitations Mr. Osland believes arise from his non-severe medical conditions. The record suggests that Mr. Osland has primarily complained of only one physical impairment: hand tremors. And his brief makes little if any argument with respect to how these other impairments further limit his ability to work. It is not the duty of the ALJ to develop theories of disability on behalf of Mr. Osland.[3]

---

[3] Insofar as Mr. Osland contends that the ALJ erred by finding his sleep apnea to be a non-severe impairment, the error was harmless. The step 2 determination of severity is primarily relevant to the step

### C. Other Issues.

The ALJ cites the gap between when Mr. Osland claims that his debilitating mental condition began (November 1, 2009) and when he apparently first sought treatment for it (July 22, 2010) as further proof that Mr. Osland does not suffer from the severity of symptoms and limitations he alleges. R. 335–36. However, no inquiry was ever made into this gap. The reason for the apparent delay in seeking treatment should be further developed on remand.

## ORDER

The Court is not, by this order, finding that the ALJ's conclusion is necessarily wrong. Rather, the Court is not satisfied that the reasoning as provided necessarily supports the conclusion, particularly with reference to the bases for discrediting the opinion of the primary treating provider. For the reasons discussed above, the case is REVERSED and REMANDED to the ALJ for further findings consistent with this opinion.

DATED this 26th day of March, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

---

3 analysis, i.e. whether the severe impairment meets or medically equals a Listing. *See, e.g.*, 20 CFR § 404.1525(a); SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Mr. Osland has put forward no claim on appeal that any of his impairments met or medically equaled a Listing. Instead he contends that his sleep apnea had a functional impact on his ability to perform basic work activities and should have been incorporated into his RFC. Because an RFC must incorporate both severe and non-severe impairments, any error in considering the impairment non-severe was harmless.